## BAIN *v.* FRY.

**1. HIGHWAYS AND STREETS—DEDICATION—EVIDENCE.**

Finding of trial court that neither a statutory nor a common-law dedication of 15-foot way had been proved in suit for injunction by owner of adjoining lot to remove fence at his lot line *held*, supported by ample testimony, including that of city officials who stated it had never been accepted nor maintained by the city and former owners of premises that the way, which was not essential as a means of access to plaintiff's lot, had been the only means of access to lots on the other side of the way and that the fence was erected for the purpose of maintaining the drive as a private one (CL 1948, § 221.20).

**2. SAME—RIGHT BY USER.**

To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive (CL 1948, § 221.20).

**3. SAME—INTERMITTENT USE BY PUBLIC—ACCEPTANCE.**

The use of private land for a public way cannot be a mere permissive use by the public however long continued, hence, where 15-foot way between 2 streets was at times used extensively, but not continuously so, by the public, such user did not result in its becoming a public highway, especially where public authorities did not take it over and maintain it.

**4. SAME—CERTIFICATE ON ASSESSOR'S PLAT—FAILURE TO ASSESS TO DOMINANT LOT OWNERS.**

Certificate on assessor's plat to the effect that streets and alleys

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Dedication § 31.
[2] 16 Am Jur, Dedication §§ 45, 50.
[3] 16 Am Jur, Dedication §§ 47, 49.
[4] 16 Am Jur, Dedication § 32.

thereon "are now being used for such purposes" *held,* insuffi-
cient to create an acceptance by the city of 15-foot way as a
public highway, nor would the failure to assess such way to
the dominant lot owners have such effect, since a tax assessor
does not have authority to accept the dedication of a street.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 15, 1958. (Docket No. 53, Calendar No. 47,138.) Decided April 14, 1958.

Bill by Ivan Bain and Irene Bain against Carl O. Fry and the City of Pontiac, a municipal corporation, to establish an existing drive as a public highway. A. J. Roy, Mabel E. Roy, Edward Booth and Nora Booth intervene as parties defendant. Decree for defendants determining road as a private drive and enjoining plaintiffs' use thereof. Plaintiffs appeal. Affirmed.

*Robert D. Heitsch,* for plaintiffs.

*William A. Ewart,* for defendant city.

*Kenneth H. Hempstead,* for defendant Fry.

*L. C. Burch, Jr.,* for intervening defendants Roy and Booth.

Kavanagh, J. On July 8, 1955, plaintiffs filed their bill of complaint in the Oakland county circuit court against defendants Carl O. Fry and the city of Pontiac. They alleged ownership of lot 61 of assessor's plat No. 122 of said city; that said lot was on the corner of Oakland avenue and Myrtle drive. Plaintiffs further alleged that they had occupied the premises since about August, 1942, during which time Myrtle drive had been used as a public alley openly and continuously until defendant Carl O. Fry, who owned and occupied the lot directly north of plain-

tiffs' lot, across Myrtle drive, a short time before the filing of the bill of complaint, used a portion of Myrtle drive for parking his automobile thereon so that plaintiffs were unable to have access from Myrtle drive to the rear of their lot; that defendant Carl O. Fry had caused a fence to be constructed along the southeasterly boundary of Myrtle drive in such a fashion as to constitute an obstruction of plaintiffs' access to Myrtle drive, causing them damages in connection with their property rights in said lot 61.   Plaintiffs further alleged that the city of Pontiac was named defendant because of the public interest in Myrtle drive as a part of its street and highway system.   It was also alleged that certain city officials had declined to assume the responsibility of keeping Myrtle drive open as a public alley.

Subsequently defendant Roy and wife and defendant Booth and wife sought and were granted the right to intervene as party defendants on the theory that their property rights were involved.   They alleged that no lot owner on the plaintiffs' side of the alley had access to Myrtle drive from their properties for a period of 30 years or more.   Intervening defendant A. J. Roy further alleged that he is the owner of lot 47 of assessor's plat No. 122 and that the lot includes Myrtle drive for its entire width of 15 feet.

Intervening defendants moved to dissolve the temporary injunction granted to plaintiffs and asked that a counterinjunction be granted defendants restraining plaintiffs from using Myrtle drive as a means of ingress to and egress from their properties. The motion to dismiss plaintiffs' temporary injunction was granted, as was the request for a counterinjunction.

Defendants all allege that Myrtle drive was a private drive for the use and benefit of the persons owning lots on the northwest side of Myrtle drive; that

the private drive was never accepted by the city of Pontiac; that the drive was never offered to said city so that a dedication could have taken place. They denied that any use by the public or maintenance of the premises by public authorities had been made that would constitute a common-law dedication.

Plaintiffs claim that the public at large had used Myrtle drive; that it had been maintained by the city of Pontiac; that through the recording and approving of assessor's plat No. 122 city officials as well as county officials had participated in an acceptance of the dedication of Myrtle drive for public use by the city assessor prior to the plat's recording in 1933, indorsing upon the plat the following:

"and that the streets and alleys as shown on said plat are now being used for such purposes."

The circuit court at the conclusion of the trial concluded that no dedication—statutory,* common law or otherwise—had been shown by plaintiffs with reference to Myrtle drive; that it was a private drive; that plaintiffs had no right to use said drive nor any property rights in and to the easement created by Myrtle drive, and permanently enjoined plaintiffs from using said drive.

Plaintiffs appeal to this Court, contending that the record shows that assessor's plat No. 122 was recorded in the Oakland county register of deeds office on April 20, 1933; that it portrays Myrtle drive as a 15-foot drive or alley; that the city of Pontiac erected street signs at the intersection of Myrtle drive with Oakland avenue and Howard street, which are standard signs similar to those erected at other streets in the city; that none of the land described as Myrtle drive has been assessed for taxation; that under the statutes of the State of Michigan, roads

---

* See CL.1948, § 221.20 (Stat Ann § 9.21).—REPORTER.

used as highways for 10 years or more are deemed public highways whether any record or other proof exists that they were ever established as highways or not. Plaintiffs contend that testimony indicates such use for more than the statutory time, and that a dedication for the use of the public has been created with reference to Myrtle drive.

It appears to be an undisputed fact that witness Eva L. Mosher and her deceased husband were the owners of a small tract of land between Oakland avenue and Howard street in the city of Pontiac. Several years before this action was instituted the said Moshers subdivided it into several building sites. A private drive 15 feet in width extending from Oakland avenue to Howard street provided the only means of access to several of the lots. This private drive became known as Myrtle drive. The area embraced in the tract for many years has been fenced off from adjoining lands. The plaintiffs, owners of a parcel of adjoining land, now seek a removal of the fence barrier so as to have ingress and egress to Myrtle drive for the purpose of driving to and from a garage they are constructing at the rear of their lot. The drive is not essential as a means of access as they enjoy with an adjacent owner the benefit of a mutual drive, which could permit access to the garage from another direction. Mrs. Mosher testified that along the southeasterly line of the driveway, which was the line of their property, was erected a fence for the purpose of maintaining the drive as a private one.

An examination of this record discloses ample testimony upon which the trial court was justified in basing a finding that neither a statutory nor common-law dedication had been proven. The testimony of Mrs. Mosher that it was the intention of her and her husband at the time the easement was created to to make it a private drive and not to dedicate it for

the public use is consistent with the position of the city of Pontiac officials that it had never been accepted by the city, that it had not been maintained by the city, and that it was not a part of the city's system of streets, alleys and highways.

Mrs. Mosher further testified that she and her husband graveled the private drive off and on throughout the years. She also testified that they had caused private drive signs to be installed at both the Oakland avenue and Howard street entrances and through the years maintained them in keeping with their intention to indicate to the public that it was to remain a private drive.

Plaintiff Ivan Bain himself testified that when Oakland avenue was being paved he sought permission of the Moshers to use Myrtle drive on a temporary basis. He also stated that prior to building a fence along the south side of Myrtle drive across the north portion of his lot, where originally a steel cable was installed, he sought permission of the Moshers to remove the steel cable and replace it with a fence, as he testified: "because it was tearing our clothes and cutting the children's hands."

Witness A. J. Roy testified that he had sought from city officials repairs for the drive and had been refused by the officials for the reason that the drive was private. The same witness testified that he had repaired the drive himself.

From this testimony the trial judge could logically decide that there had been no intention on the part of the owners of the property to offer the drive for public use and there had been no actual offer as is required for any type of dedication.

While there is testimony to show that considerable public use has been made of Myrtle drive (particularly during the war years by factory workers who found it an easy outlet to use following shift breaks and on some occasions by people when Oak-

land avenue was being repaired), it does not appear that such use by the public was made of Myrtle drive that would meet the requirements of a dedication as a public alley or street. In order to have a common-law dedication there must be: (1) an intent by the owners of the property to offer it to the public for use; (2) there must be acceptance of this offer by the public officials and maintenance of the alley, street or highway by the public officials; (3) there must be a use by the public generally.

In *Missaukee Lakes Land Co.* v. *Missaukee County Road Commission,* 333 Mich 372, 379, this Court said:

" 'To constitute a highway by user, there must be a defined line, and it must be used and worked upon by the public authorities, and traveled over and used by the public, for 10 consecutive years, without interruption, and the possession thereof by the public must be open, notorious, and exclusive.' *Alton* v. *Meeuwenberg* (syllabus), 108 Mich 629."

This use cannot be a mere permissive use by the general public however long continued. In order to make it a public highway the use must be so open, notorious and hostile as to be notice to the landowner that his title is denied. Certainly the use in this particular case was not of such a character.

Use alone by the public, even for many years, has been held by this Court to be insufficient to establish a road as a public road by the user, since, to establish it as such, there must also have been acceptance by the public at least by taking over control and maintenance of some portion of such road. *Snow* v. *Murphy,* 248 Mich 659. As to the contention upon notorious and hostile use, this rule has been continuously followed in Michigan, as is evidenced by the decisions in *Alton* v. *Meeuwenberg,* 108 Mich 629; *Stickley* v. *Township of Sodus,* 131 Mich 510 (59 LRA 287); *Murphey* v. *Township of Lee,* 239 Mich

551; *Missaukee Lakes Land Co.* v. *Missaukee County Road Commission, supra.* The circuit court properly found that no such use was made of Myrtle drive.

Plaintiffs' contention that the action of the city assessor in his certificate attached to the recorded assessor's plat No. 122 to the effect that the streets and alleys, including Myrtle drive as an alley, "are now being used for such purposes" was sufficient to create an acceptance by the city of Pontiac is not supported. The trial court correctly held that the action of the city assessor in his certificate attached to the recorded assessor's plat No. 122 was not sufficient to create an acceptance by the city of Pontiac, and certainly a failure to assess Myrtle drive to dominant lot owners could not do so.

It was held in the case of *Ribble* v. *Burnham,* 253 Mich 338, also in *Murphey* v. *Township of Lee, supra,* that a tax assessor does not have the authority to accept the dedication of a street.

It is apparent that the trial judge who saw the witnesses testify and who was in a position to properly weigh their testimony by observing their demeanor in court, had ample evidence upon which to reach the conclusion that Myrtle drive had never been dedicated as a public street or alley, either by common-law or statutory dedication. On the record we feel he reached the right conclusion.

Affirmed. Costs in favor of the defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.